UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHOLONDA GREGORY, | : |
| Plaintiff, | : C.A. No.: 2:22-cv-00929 |
| v. | : |
| CITY OF PHILADELPHIA (Dept. of Prisons); and | : |
| BLANCHE CARNEY, Commissioner, Dept. of Prisons; and | : |
| TERRENCE CLARK, Deputy Commissioner, Dept. of Prisons; and | : |
| XAVIER BEAUFORT, Deputy Commissioner, Dept. of Prisons; and | : |
| NORMAN WILLIAMS, Deputy Warden, Dept. of Prisons; and | : |
| JAMES SMITH, Captain, Dept. of Prisons; and | : |
| IVAN MARSHALL, Director, Office of Professional Compliance, Dept. of Prisons, | : |
| Defendants. | : |

**COMPLAINT**

Plaintiff, Sholonda Gregory, by and through her undersigned attorneys, files the within Complaint pursuant to 42 U.S.C. §1983 for violations of Plaintiff's First Amendment right to free speech and to petition the government for the redress of grievances; and pursuant to the Pennsylvania Whistleblower Protection Law, 43 P.S. §1421 *et seq.* (the "Whistleblower Law"). Plaintiff further alleges she suffered retaliation for refusing to cooperate in Defendants' contempt of this Court's Orders in the matter of *Remick, et al. v. City of Philadelphia, et al.*, No: 2:20-cv-01959-BMS (Schiller, J.).

**I.      PARTIES, JURISDICTION & VENUE**

1. Plaintiff Sholonda Gregory, is an adult individual, domiciled at 2944 Reed St., Philadelphia, PA 19146  She was, at times material, a correctional Sergeant, promoted to correctional Lieutenant on June 28, 2021 and demoted back to correctional Sergeant on December 10, 2021.  The demotion occurred after Plaintiff sent *Exhibit A*, October 5, 2021 whistleblower letter (*see infra*).

2. Defendant City of Philadelphia is the legal entity subject to jurisdiction of this Court. The Department of Prisons is the department in the City of Philadelphia relevant to this Complaint. (Herein "Defendant" or the "City" or "Prisons").

3. Defendant Blanche Carney is the Commissioner of Prisons. She is sued in her official capacity.

4. Defendant Terence Clark is Deputy Commissioner of Prisons.  He is sued in his official capacity.

5. Defendant Xavier Beaufort is Deputy Commissioner of Prisons.  He is sued in his official capacity.

6. Defendant Norman Williams is Deputy Warden at the Philadelphia Industrial Correctional Center ("PICC"), one of the jails on the Prisons Campus where Plaintiff was assigned after her promotion to Lieutenant.  Defendant Williams is sued in his official capacity.

7. Defendant James Smith is a Captain at PICC.  He is sued in his official capacity.

8. Defendant Ivan Marshall is the Director of Prisons' Office of Professional Compliance. He is sued in his official capacity.

9. This Court has federal question jurisdiction over Plaintiff's claims under 42 U.S.C. §1983 ("§1983") for violations of her First Amendment right to report horrific human rights abuses taking place in Prisons at this time.

10. This Court also has federal question jurisdiction to enforce its orders in *Remick*.

11. This Court has supplemental jurisdiction over Plaintiff's Whistleblower Law claims.

12. Venue is appropriate in this Court involving the conduct of the City of Philadelphia.

13. This action is timely filed within two years of the retaliation she experienced for speaking about matters of public concern.

14. This action is timely filed within 180 days of the retaliatory actions that followed Plaintiff's report of wrongdoing pursuant to the Whistleblower Law.

## II. FACTS

15. Plaintiff Sholonda Gregory has worked at Philadelphia Prisons for over twenty-three years. She worked her way up to Sergeant and, on June 28, 2021, was promoted to Lieutenant. In her two-plus-decades of experience as a correctional officer, jails were properly staffed with adequate correctional officers. Everything was run on a set schedule. Inmates were in general population and were able to shower, exercise, use the law library, access social workers, the chaplain, perform their jobs in the kitchen, or cleaning or laundry, or in the receiving room, they had visitors on a regular basis. They had more communication with children and families. It was jail, but the conditions were humane and the prisons ran on a fair routine.

16. In or about May 2016, long before COVID was an issue, Commissioner Carney drastically cut the budget for regular prisons operations and diverted funds to Corizon Health; GD Correctional Food Services; U.S. Facilities, Centurion Detention Health Services and other outside vendors at the expense of investments in the staff and infrastructure needed to assure good order and humane conditions at Prisons.

17. Commissioner Carney closed two jails – the Detention Center and the House of Corrections; more prisoners were packed into smaller space. The census was up when she closed the jails. Officers were forced to change shifts and a mass resignation began at that time. Strains on the system became apparent.

18.     COVID caused these strains to crack.  General populations were all shut down. Lockdown was the norm.  Prisons failed to provide PPE and correctional officers became sick with COVID at alarming rates.  The lack of staff meant that inmates were left in lockdown for outrageous periods of time.  Inmates were unable to shower. They were unable to exercise. They were deprived access to the law library. Prison jobs were not worked.  Inmates were unable to communicate with their families.  They became unruly and violent.  The inmates learned how to break locks on their cells and wreaked havoc on the prisons floor. Plaintiff brought this and other matters to Defendants' attention in a letter dated October 5, 2021.  *Exhibit A* (incorporated herein by reference).

19.     The violence resulting from inmates free of their cells on a regular basis, with far less than adequate staff to control them, was horrifying. Officers were unable to keep prisoners in cells. Inmates found access to materials they could use to make weapons.  Inadequate staffing meant that unarmed guards (or armed only with pepper spray) had to face inmates with homemade knives.

20.     The conditions led to riots.  Plaintiff recall there were at least three riots in 2021 in three different facilities.  Commissioner Carney told the public the officers were engaged in drills and she covered up the riots.

21.     Inmates filed a class action lawsuit in the United States District Court for the Eastern District of Pennsylvania, *Remick, et al. v. City of Philadelphia, et al.*, No: 2:20-cv-01959-BMS (Schiller, J.). An injunction was issued that required Prisons to provide yard time, etc.

22.     Plaintiff was told to falsify time out of cell records to deceive this Court in the *Remick* case.  Plaintiff refused.

23.     Plaintiff witnessed that hundreds of inmates were placed in solitary confinement for excessive times (another civil rights violation).  As a newly promoted Lieutenant, Plaintiff took the responsibility to document the inmates in solitary confinement and determine whether they should continue to be held there.  She was shocked to learn of inmates in solitary for about a year.  When she

attempted to document and rectify this situation, Plaintiff was told to stand down and that this was none of her business. Defendant Williams gave this order to Plaintiff.

24. Plaintiff witnessed firsthand, and with intimate knowledge of how the Prisons worked, that the system had completely broken down.

25. After witnessing many events that shocked the conscience, Plaintiff wrote *Exhibit A*. This letter was sent to the Mayor; Judge Schiller; City Councilmembers; the ACLU; DA Krasner; the Office of Inspector General; and lead counsel for Plaintiffs in the *Remick* matter.

26. Defendants Carney; Clark; Beaufort; Williams; Smith; and Marshall all knew of *Exhibit A* contemporaneous to its submission by Plaintiff.

27. In response to *Exhibit A*, Defendants retaliated against Plaintiff. On December 10, 2021, she lost her promotion to Lieutenant.

28. The stated reasons for revoking the promotion are pretextual and were concocted after *Exhibit A* was delivered.

29. Defendant Smith admitted that Defendant Williams demanded that Plaintiff be demoted. Another captain, Gerald Simmons, told Plaintiff that Defendants intended to demote her.

30. After her demotion, Plaintiff was transferred to another facility and was humiliated. She has suffered, and continues to suffer, great distress from the misconduct of Defendant.

31. As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe injuries, which include but are not limited to:

> a) Lost wages;
> b) Lost back pay;
> c) Lost future wages;
> d) Lost benefits;
> e) Embarrassment and humiliation;
> f) severe emotional distress; and
> g) other damages as described in further detail in this pleading and as will become evident through the course of discovery.

### III. CAUSES OF ACTION

#### COUNT I: Retaliation (Enforceable Pursuant to §1983)

32. Repeats and realleges paragraphs 1-31 as if set forth at length herein.

33. Plaintiff is a public employee.

34. Plaintiff engaged in constitutionally protected conduct.

35. Defendant engaged in retaliatory action sufficient to deter a reasonable person of ordinary firmness from exercising his constitutionally protected rights.

36. There is a causal link between the constitutionally protected conduct and the retaliatory action.

37. Plaintiff's speech about widespread human rights abuses in Prisons was as a citizen on a matter of public concern.

38. Plaintiff's communications about human rights abuses in Prisons was a petition to the government for the redress of grievances.

39. Defendant was not justified in treating Plaintiff differently from any other member of the general public.

40. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered injuries as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff demands Judgment against Defendants for all equitable and monetary relief available under the applicable laws and such other relief as this Court deems just and proper.

#### COUNT II: Contempt of Court in the *Remick* Matter.

41. Repeats and realleges paragraphs 1-40 as if set forth at length herein.

42. Defendants submitted false reports of time out of cell and other matters required by the consent order in the *Remick* matter.

43. Plaintiff refused to participate in submitting false statements.

44. As a direct and proximate result of Plaintiff's refusal to participate in the contemptuous conduct of Defendant, Plaintiff suffered injury.

45. This Court has the inherent power to enforce its own orders and to remedy any harm caused to others by a party's contempt of a court order.

46. As a direct and proximate result of Defendant's misconduct, Plaintiff suffered injuries as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff demands Judgment against Defendants for all equitable and monetary relief available under the applicable laws and such other relief as this Court deems just and proper.

### COUNT III:  Pennsylvania Whistleblower Law

47. Repeats and realleges paragraphs 1-46 as if set forth at length herein.

48. Plaintiff is an "employee" as defined by the Whistleblower law.

49. Defendants engaged in retaliatory action sufficient to deter a reasonable person of ordinary firmness from whistleblowing gross misconduct.

50. There is a causal link between Plaintiff's whistleblowing and the retaliatory action.

51. Defendant was not justified in treating Plaintiff differently from any other member of the general public.

52. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered injuries as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff demands Judgment against Defendants for all equitable and monetary relief available under the applicable laws and such other relief as this Court deems just and proper.

### COUNT IV:  Common Law Whistleblower Retaliation

53. Repeats and realleges paragraphs 1-52 as if set forth at length herein.

54. The conduct of Defendants was so obviously against the public health, safety, morals or welfare that there is virtually unanimity of opinion with regard to it.

55. There is a causal link between Plaintiff's whistleblowing and the retaliatory action.

56. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff suffered injuries as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff demands Judgment against Defendants for all equitable and monetary relief available under the applicable laws and such other relief as this Court deems just and proper.

                                           Respectfully submitted,

                                           CREECH & CREECH LLC

                                           TIMOTHY P. CREECH
                                           1835 Market St., Suite 2626
                                           Philadelphia, PA 19103
                                           (215) 575-7618; Fax: (215) 575-7688
                                           Timothy@creechandcreech.com

DATED:      March 11, 2022