## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHOLONDA GREGORY, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No.: ____2:22-cv-00929-BMS____ |
| | : | |
| CITY OF PHILADELPHIA | : | |
| (Dept. of Prisons); | : | |
| and | : | |
| BLANCHE CARNEY, | : | |
| Commissioner, Dept. of Prisons; | : | |
| and | : | |
| TERRENCE CLARK, | : | |
| Deputy Commissioner, Dept. of Prisons; | : | |
| and | : | |
| XAVIER BEAUFORT, | : | |
| Deputy Commissioner, Dept. of Prisons; | : | |
| and | : | |
| NORMAN WILLIAMS, | : | |
| Deputy Warden, Dept. of Prisons; | : | |
| and | : | |
| JAMES SMITH, | : | |
| Captain, Dept. of Prisons; | : | |
| and | : | |
| IVAN MARSHALL, | : | |
| Director, Office of Professional Compliance, | : | |
| Dept. of Prisons, | : | |
| and | : | |
| PATRICIA POWERS, | : | |
| Deputy Warden, Dept. of Prisons | : | |
| and | : | |
| DANIELLE JOHNSON, | : | |
| Correctional Lieutenant, Riverside Correctional | : | |
| Facility, Dept. of Prisons, | : | |
| and | : | |
| SHERYL HILL, | : | |
| Correctional Lieutenant, Riverside Correctional | : | |
| Facility, Dept. of Prisons, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## <u>SECOND AMENDED COMPLAINT</u>

Plaintiff, Sholonda Gregory, by and through her undersigned attorneys, files the within Second Amended Complaint pursuant to 42 U.S.C. §1983 for violations of Plaintiff's First Amendment right to free speech and to petition the government for the redress of grievances; and pursuant to the Pennsylvania Whistleblower Protection Law, 43 P.S. §1421 *et seq.* (the "Whistleblower Law"). Plaintiff further alleges she suffered retaliation for refusing to cooperate in Defendants' contempt of this Court's Orders in the matter of *Remick, et al. v. City of Philadelphia, et al.*, No: 2:20-cv-01959-BMS (Schiller, J.).

## I.    PARTIES, JURISDICTION & VENUE

1.    Plaintiff Sholonda Gregory, is an adult individual, domiciled at 2944 Reed St., Philadelphia, PA 19146.  She was promoted to correctional Sergeant in August 2009, promoted to correctional Lieutenant on June 28, 2021, and demoted back to correctional Sergeant on December 10, 2021.  The demotion occurred after Plaintiff sent *Exhibit A*, October 5, 2021, whistleblower letter (*see infra*).

2.    Defendant City of Philadelphia is the legal entity subject to jurisdiction of this Court. The Department of Prisons is the department in the City of Philadelphia relevant to this Complaint. (Herein "Defendant" or the "City" or "Prisons").

3.    Defendant Blanche Carney is the Commissioner of Prisons. She is sued in her official capacity.

4.    Defendant Terence Clark is Deputy Commissioner of Prisons.  He is sued in his official capacity.

5.    Defendant Xavier Beaufort is Deputy Commissioner of Prisons.  He is sued in his official capacity.

6.     Defendant Norman Williams is Deputy Warden at the Philadelphia Industrial Correctional Center ("PICC"), one of the jails on the Prisons Campus where Plaintiff was assigned after her promotion to Lieutenant.  Defendant Williams is sued in his official capacity.

7.     Defendant James Smith is a Captain at PICC.  He is sued in his official capacity.

8.     Defendant Ivan Marshall is the Director of Prisons' Office of Professional Compliance. He is sued in his official capacity.

9.     Defendant Patricia Powers is Deputy Warden at Defendant's Department of Prisons. She is sued in her official capacity.

10.    Defendant Danielle Johnson is a Correctional Lieutenant at Riverside Correctional Facility ("RCF"), one of the jails on the Prisons Campus where Plaintiff was assigned after her demotion to Sergeant.  Defendant Johnson is sued in her official capacity.

11.    Defendant Cheryl Hill is a Correctional Lieutenant at RCF.  Defendant Hill is sued in her official capacity.

12.    This Court has federal question jurisdiction over Plaintiff's claims under 42 U.S.C. §1983 ("§1983") for violations of her First Amendment right to report horrific human rights abuses taking place in Prisons at this time.

13.    This Court also has federal question jurisdiction to enforce its orders in *Remick*.

14.    This Court has supplemental jurisdiction over Plaintiff's Whistleblower Law claims.

15.    Venue is appropriate in this Court involving the conduct of the City of Philadelphia.

16.    This action is timely filed within two years of the retaliation she experienced for speaking about matters of public concern.

17.    This action is timely filed within 180 days of the retaliatory actions that followed Plaintiff's report of wrongdoing pursuant to the Whistleblower Law.

## II.   FACTS

18.   Plaintiff Sholonda Gregory has worked at Philadelphia Prisons for over twenty-three years.  She worked her way up to Sergeant and, on June 28, 2021, was promoted to Lieutenant. In her two-plus-decades of experience as a correctional officer, jails were properly staffed with adequate correctional officers. Everything was run on a set schedule. Inmates were in general population and were able to shower, exercise, use the law library, access social workers, the chaplain, perform their jobs in the kitchen, or cleaning or laundry, or in the receiving room, they had visitors on a regular basis. They had more communication with children and families. It was jail, but the conditions were humane and the prisons ran on a fair routine.

19.   In or about May 2016, long before COVID was an issue, Commissioner Carney drastically cut the budget for regular prisons operations and diverted funds to Corizon Health; GD Correctional Food Services; U.S. Facilities, Centurion Detention Health Services and other outside vendors at the expense of investments in the staff and infrastructure needed to assure good order and humane conditions at Prisons.

20.   Commissioner Carney closed two jails – the Detention Center and the House of Corrections; more prisoners were packed into smaller space.  The census was up when she closed the jails.  Officers were forced to change shifts and a mass resignation began at that time. Strains on the system became apparent.

21.   COVID caused these strains to crack.  General populations were all shut down. Lockdown was the norm.  Prisons failed to provide PPE and correctional officers became sick with COVID at alarming rates.  The lack of staff meant that inmates were left in lockdown for outrageous periods of time.  Inmates were unable to shower. They were unable to exercise. They were deprived access to the law library. Prison jobs were not worked.  Inmates were unable to communicate with their families.  They became unruly and violent.  The inmates learned how to break locks on their cells

4

and wreaked havoc on the prisons floor. Plaintiff brought this and other matters to Defendants' attention in a letter dated October 5, 2021. *Exhibit A* (incorporated herein by reference).

22.     The violence resulting from inmates free of their cells on a regular basis, with far less than adequate staff to control them, was horrifying. Officers were unable to keep prisoners in cells. Inmates found access to materials they could use to make weapons.  Inadequate staffing meant that unarmed guards (or armed only with pepper spray) had to face inmates with homemade knives.

23.     The conditions led to riots.  Plaintiff recall there were at least three riots in 2021 in three different facilities.  Commissioner Carney told the public the officers were engaged in drills and she covered up the riots.

24.     Inmates filed a class action lawsuit in the United States District Court for the Eastern District of Pennsylvania, *Remick, et al. v. City of Philadelphia, et al.*, No: 2:20-cv-01959-BMS (Schiller, J.). An injunction was issued that required Prisons to provide yard time, etc.

25.     Plaintiff was told to falsify time out of cell records to deceive this Court in the *Remick* case.   Plaintiff refused.

26.     Plaintiff witnessed that hundreds of inmates were placed in solitary confinement for excessive times (another civil rights violation).   As a newly promoted Lieutenant, Plaintiff was responsible for "Custody Reports" that document the inmates in solitary confinement and determine whether they should continue to be held there.  She was shocked to learn of inmates in solitary for about a year.  When she attempted to document and rectify this situation, Plaintiff was told to stand down and that this was none of her business.  Defendant Williams gave this order to Plaintiff.

27.     Plaintiff witnessed firsthand, and with intimate knowledge of how the Prisons worked, that the system had completely broken down.

28.     After witnessing many events that shocked the conscience, Plaintiff wrote *Exhibit A*. This letter was sent to the Mayor; Judge Schiller; City Councilmembers; the ACLU; DA Krasner; the Office of Inspector General; and lead counsel for Plaintiffs in the *Remick* matter.

29.     Defendants Carney; Clark; Beaufort; Williams; Smith; and Marshall all knew of *Exhibit A* contemporaneous to its submission by Plaintiff.

30.     In response to *Exhibit A*, Defendants retaliated against Plaintiff.  On December 10, 2021, she lost her promotion to Lieutenant.

31.     The stated reasons for revoking the promotion are pretextual and were concocted after *Exhibit A* was delivered.

32.     *Exhibit B* is an EVR, dated October 20, 2021, that deals with the time out of cell reports (required by the *Remick* matter) and conversations on October 9 and October 10.  The real issue with these reports was that Plaintiff refused to submit false information.

33.     *Exhibit C* is an EVR, also dated October 20, 2021, after *Exhibit A*.  It alleged there was an error in September 2021.  The alleged error was not brought to Plaintiff's attention until after Plaintiff sent *Exhibit A*.

34.     *Exhibit D* is the third EVR that also deals with retaliatory actions by Defendants after *Exhibit A*.  On November 1, 2021, inmates were transferred to a unit that had been repaired following riots earlier that year.  On November 2, Plaintiff began the lengthy process of documenting this mass transfer; it could not be completed by herself in one shift.  It was retaliatory to assign this enormous task exclusively to Plaintiff.  When Plaintiff returned to work on November 3, the work Plaintiff began was missing from the shared drive.  Plaintiff believes, and therefore avers, that her work was deleted to retaliate against her.

35.     On December 7, 2021, Plaintiff received a Performance Report (*Exhibit E*); and on December 8, 2021, Plaintiff received a "Rejection Notice During Probationary Period" (*Exhibit F*).

This documents state pretextual reasons for the demotion in many respects, including but not limited to the following:

a) During her tenure as Lieutenant, Plaintiff submitted numerous investigation reports to her Captain.  She was often required to submit 3-4 reports in a day. There were no complaints about Plaintiff's investigations until the eve of her demotion.  Plaintiff cannot give further information about this issue because Defendants failed to provide details about any of the nine allegedly outstanding investigations.

b) The complaint about the Custody Reports deals with the issues of people in solitary confinement.  Defendants did not raise any issues about Plaintiff's custody reports until after *Exhibit A* – Plaintiff had prepared custody reports for months and did not receive any notice of any alleged "error" until after *Exhibit A* detailed the abuse of solitary confinement.

c) Plaintiff does not recall a "counseling record" on August 2.  In fact, Plaintiff has no record of any discipline or counseling between her promotion and *Exhibit A*.

d) Plaintiff did not know that she missed a phone call from Defendant Williams. Plaintiff did not hear about this until after *Exhibit A*.  It is implausible to the extreme that Plaintiff would give a "flippant response" to a Major and not be written up for it.  That alleged "flippant response" was in early August and not brought to Plaintiff's attention until after *Exhibit A*.

e) The statement that a "daily Kronos clearance email that you are responsible for has not been sent to the correct administrative staff as previously ordered" is inaccurate.  Plaintiff sent the email by group message.  That group message

included a captain who had moved to another facility after Plaintiff was given the group message recipient list. Plaintiff was never told to remove the captain from the list. Plaintiff has no knowledge of any other error in the Kronos clearance emails.

f) Plaintiff does not have and cannot recall an October 12, 2021 email (one week after *Exhibit A*). Plaintiff does recall a complaint from Defendant Smith about the content of custody reports shortly after *Exhibit A* was sent. However, his complaints at this time were vague and not detailed.

g) Plaintiff did not say "If you saw all of these errors why didn't you correct them?" Plaintiff did ask Defendant Smith why reports were not done by the shift commander when Plaintiff was absent from work, as was required. That shift commander was, on many occasions, Defendant Smith himself.

h) It is not clear what "weekly coaching" refers to. Plaintiff heard no complaints about "weekly coaching and Supervisor Log Review Reports" until after *Exhibit A* was submitted.

i) Plaintiff prepared Supervisor Log Review Reports, that included problems like, *e.g.*, the smell of smoke from K2 and its effects on the health of officers on patrol; the failure of the locks and inmates popping out of cells. Defendant Smith told Plaintiff not to document these failures of prison administration.

36.    Defendant Smith admitted that Defendant Williams demanded that Plaintiff be demoted. Another captain, Gerald Simmons, told Plaintiff that Defendants intended to demote her. It was clear, based on the context of the conversation, that this was because of Plaintiff's letter.

37.    After her demotion, Plaintiff was transferred to RCF and was humiliated. She has suffered, and continues to suffer, great distress from the misconduct of Defendant.

38.     In or about March 2022, Defendant Johnson was promoted to Lieutenant and assigned to RCF. It is believed, and therefore averred, that Defendant Johnson is or was in a relationship with Defendant Clark.

39.     On April 6, 2022, approximately two weeks after her promotion, Defendant Johnson wrote up Plaintiff for allegedly failing to discharge prisoners.

40.     As a newly promoted Lieutenant, Johnson targeted Plaintiff in order to ingratiate herself to her supervisors while she is in her probationary promotion period.

41.     Plaintiff submitted proof to Defendant that the prisoners were timely discharged in accordance with the rules and with Defendant Johnson's instructions.

42.     Nevertheless, Defendant sustained the charges against Plaintiff.

43.     Plaintiff was given a 10-day suspension for the frivolous charges.  Defendant Patricia Powers led the hearing and sustained the charges despite the clear evidence that Plaintiff performed her duties in accordance with the law and Defendant's policies and procedures.

44.     One of the reasons why the suspension was 10 days is because it was listed as a "2nd offense" for certain general orders.  The "first offense" was the write-up that led to the demotion as alleged *supra*.

45.     On April 9, 2022, Plaintiff was charged with failing to document contraband found during searches of prisoners' cells.  She was referred to a formal board hearing because it was her 2nd offense.  (*See supra*.)  However, Plaintiff did document the contraband in accordance with her job duties.

46.     Plaintiff obtained evidence from a Captain that stated she had documented the contraband.  She was forced to attend the board hearing on June 9, 2022.  The charges, which had no factual basis whatsoever, were not sustained.

47.     The next day, June 10, 2022, Defendant reassigned Plaintiff's post.  Plaintiff had had the same post assignment for approximately six months.  The change in post assignments was another obvious retaliatory act.

48.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe injuries, which include but are not limited to:

        a)  Lost wages;
        b)  Lost back pay;
        c)  Lost future wages;
        d)  Lost benefits;
        e)  Embarrassment and humiliation;
        f)  severe emotional distress; and
        g)  other damages as described in further detail in this pleading and as will become evident through the course of discovery.

## III.   CAUSES OF ACTION

### <u>COUNT I</u>:     Retaliation (Enforceable Pursuant to §1983)

49.     Repeats and realleges paragraphs 1-48 as if set forth at length herein.

50.     Plaintiff is a public employee.

51.     Plaintiff engaged in constitutionally protected conduct.

52.     Defendant engaged in retaliatory action sufficient to deter a reasonable person of ordinary firmness from exercising his constitutionally protected rights.

53.     There is a causal link between the constitutionally protected conduct and the retaliatory action.

54.     Plaintiff's speech about widespread human rights abuses in Prisons was as a citizen on a matter of public concern.

55.     Plaintiff's communications about human rights abuses in Prisons was a petition to the government for the redress of grievances.

56.     Defendant was not justified in treating Plaintiff differently from any other member of the general public.

57.     As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered injuries as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff demands Judgment against Defendants for all equitable and monetary relief available under the applicable laws and such other relief as this Court deems just and proper.

**COUNT II:**   **Contempt of Court in the *Remick* Matter.**

58.     Repeats and realleges paragraphs 1-57 as if set forth at length herein.

59.     Defendants submitted false reports of time out of cell and other matters required by the consent order in the *Remick* matter.

60.     Plaintiff refused to participate in submitting false statements.

61.     As a direct and proximate result of Plaintiff's refusal to participate in the contemptuous conduct of Defendant, Plaintiff suffered injury.

62.     This Court has the inherent power to enforce its own orders and to remedy any harm caused to others by a party's contempt of a court order.

63.     This is a matter of civil contempt, or in the alternative, criminal contempt.  The knowing and outrageous conduct of Defendants was taken to cover up their false statements to the Court in the *Remick* matter, to the great harm and detriment of Plaintiff.

64.     As a direct and proximate result of Defendant's misconduct, Plaintiff suffered injuries as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff demands Judgment against Defendants for all equitable and monetary relief available under the applicable laws and such other relief as this Court deems just and proper.

**COUNT III:**  **Pennsylvania Whistleblower Law**

65.     Repeats and realleges paragraphs 1-63 as if set forth at length herein.

66.     Plaintiff is an "employee" as defined by the Whistleblower law.

67.     Defendants engaged in retaliatory action sufficient to deter a reasonable person of ordinary firmness from whistleblowing gross misconduct.

68.     There is a causal link between Plaintiff's whistleblowing and the retaliatory action.

69.     Defendant was not justified in treating Plaintiff differently from any other member of the general public.

70.     As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered injuries as set forth above and incorporated herein by reference.

WHEREFORE, Plaintiff demands Judgment against Defendants for all equitable and monetary relief available under the applicable laws and such other relief as this Court deems just and proper.

<div style="margin-left:40%;">

Respectfully submitted,

CREECH & CREECH LLC

TIMOTHY P. CREECH
1835 Market St., Suite 2626
Philadelphia, PA 19103
(215) 575-7618; Fax: (215) 575-7688
Timothy@creechandcreech.com

</div>

DATED:      August 25, 2022

October 5, 2021

Philadelphia Mayor's Office
1401 John F Kennedy Blvd
Philadelphia, Pa 19107

Dear Mayor Kennedy

My name is Sholonda Gregory, I'm a mother, sister, daughter, ex-wife, and a Lieutenant in the Philadelphia Department of Prisons. I cannot be reticent any longer and see inmates housed under these conditions The system has become so desensitized that Power and Prestige are more important than the Human rights of inmates. This Narcissistic Leadership has ignored a cry out for help from Inmates and Correctional Staff. It is heart breaking having worked for the Prisons for 23 years and see what it has succumb to.
Inmate's Human Rights, Civil Liberties, 8th Amendment Rights, Civil Rights and Rights for due process have all been Violated. It is a moral responsibility for me to bring conditions to an outside Administration who can make changes or reform the Prison System.

The current Administration need to be held accountable for creating a hostile work environment, failing to provide a safe, secured and humane environment. Failing to acknowledge Correctional Staff resigning at alarming rate in the last 18 months, Making Staff fabricate Time-Out of-Cell Reports for the courts, Untruthfulness of Staff Rosters, (padding) leaving Officers on the Prison complement to show they out Family medical Leave, Injured on Duty, or leaving them in the pool to show call outs, willfully knowing they have left the system.
Failing to provide adequate Personal Protective Equipment during pre-pandemic and post pandemic to Inmates and Correctional staff until a Class Action lawsuit was filed April 20th, 2020, by several inmates and they still failed to provide appropriate PPE for staff.  Failing to approve Correctional Staff hazardous pay during the pandemic and we are considered essential employees.

I'm currently assigned to The Philadelphia Industrial Correctional Center, I, was the Lieutenant on duty when a Major Disturbance happen on July 4th, 2021, on Delta Unit. Hazmat Suits, Shields and Batons had to be deployed to gain compliance of the unit. Inmates had flooded the unit, feces all over the unit due to flooding of sinks and toilets, several inmates broke out cell windows, Officers had to literally put their safety on the line to gain compliance.
I was assigned to the Max-side of the Jail on August 20th, 2021, when the Riot occurred on H2, G2, and F1. Inmates breached their cell doors causing damage to the facility breaking video surveillance cameras, electronic unit consoles, they broke plumbing pipes, water fountains dispersing fire extinguishers and barricading themselves inside the unit.

As of September 28th, 2021, The Philadelphia Department of Prisons is currently housing **4,464** Inmates **542** inmates are in Solitary Confinement throughout the system.
Philadelphia Industrial Correctional Center has **364** Inmates in Solitary Confinement which is relativity high for a small jail. The census as of the above date was **961**.


EXHIBIT
A

Out of **364 155** Inmates are in solitary confinement due to The Riot at The Philadelphia Industrial Center, on August 20th, 2021. **209** inmates are in Solitary Confinement at PICC prior to the riot.

Major Disturbance on July 4th, 2021, and The Riot, was caused by inmates Human Right being violated as a result they began Flooding, breaking cell windows, fighting, refusing to go back in cell, hunger strikes, creating Major Disturbances, banging on cell doors, popping out of cells due to inoperable locks not being replaced or repaired. Other examples are:

1. Disciplinary and Administration Segregation Hearings are not being held by Deputy Wardens or signed off by the Warden, sanctions given by the disciplinary hearing Captain are ignored therefore, Inmates are in Solitary Confinements for extremely long lengths of times some with minor infractions.
2. Restrictive Housing unit or solitary confinement units at PICC are held on Quarantine for long lengths of time (more than 45 days) even though they don't come out of cells to be exposed to Covid-19
3. They are not given an hour of recreation time therefore they are locked in 24 hours a day.
4. They are not able to utilize tablets, have writing paper, they are not allowed commissary, no access to hot water for food, inmates aren't able shower.
5. No communication with family members, they are not seen by Social Workers, Chaplains or Mental Health to talk about their mental state for being in solitary confinement for long lengths of time. only time they see mental health social workers, briefly, is to be held longer in Confinement.
6. The inmates who are housed in General Population Units are not given three hours of Recreation if they do come out, they must choose between shower, phone calls or recreation.
7. They have no access to law library, they are not given their legal mail, no opportunity to get jobs within the prison.

There have been approximately four homicides that have occurred inside the facilities and one outside The Curran Fromhold Correctional Facility. This Administration must think Correctional Staff is exempt from being murdered inside these facilities.
The mendacity, hypocrisy and poor Leadership at the highest level has failed to maintain the Safety and Security of our Prison System not Staff Shortage or Lack of reporting staff. Staff Shortage has been blamed for everything.

Where is the "Money"? Commissioner Blanche Carney has changed Philadelphia Prison System into the **Department** of Prisons to get funding from the State and Government for Programs for inmates which never manifested. Jails were closed to save the City of Philadelphia money, but it damaged the foundation of the Prisons, which is the Inmates, Correctional Officers, Sergeants, and Lieutenants. Thousands was spent on a parking lot that was built on a creek that we cannot park on because it's not safe to park. Deputy Commissioner, Terrence Clark, of Operations and Deputy Commissioner, Xavier Beaufort, of Administration who both came up the ranks ignored the severity of the closing of jails, is beyond belief.
Millions of dollars were given to Corizon Health, GD Correctional Food Services, U.S Facilities for CFCF and RCF, and Centruion Detention Health Services. But they refused to Invest in the

foundation of the Prison system by repairing the locks on cell doors though out the system for safety of Correctional Staff, Outside Support Staff as well as the inmates.

Attached, are two pictures from Home Depot, the first picture is of a lock, like the locks on cell doors. The other picture is of a latch or dead bolt that is being installed on cell doors (instead of repairing the locks) to keep the inmates from popping out of their cells.

First, it is a Fire Hazard, installing latches on cell doors. In case of a State of Emergency, fire, Major Disturbance, Power Outage they would have to be open or closed individually. When the electronic counsel is working properly there are two buttons that are pressed simultaneously which will open all cell doors for either the inmates to step out of their cells or to step in their cells by installing latches Correctional Staff, we will not be able to use the Release buttons.  We are not trained for this new installed equipment besides, it's Inhumane treatment of Inmates In hence, inmates popping out of cell is an issue in Curran Fromhold Correctional Facility, Philadelphia Industrial Center, Detention Center, and Riverside Correctional Facility.

In conclusion,

 Deputy Commissioner Clark put out a 5-minute video he made to be shown at roll call for five days. He showed in the Video how Correctional Officers are responsible for the cell door locks being inoperable and how they allowed the inmate to obstruct the locking mechanism. However, the locks are still inoperable.
PICC is not death row. We would have less disturbances and assault on staff if we can fix the inmate population as a whole and gain back control of the Prisons but the current Administration will not listen to Rank and File. For the system to turn around it must start at the bottom, building anything was never meant to start from the top and work its way down. I hope a change can be made for the inmates housed in Solitary Confinement as well as Correctional Staff that comes after me.

I am requesting that I be protected under the Whistleblower Executive Order 9-17

Thank You in Advance

Lieutenant, Sholonda Gregory Pay Roll # 234475

Cc: Honorable Judge Berle Schiller, United States District judge of U.S District Court for Eastern District of Pennsylvania
City Council Cindy Bass
City Council Kenyatta Johnson
City Council President Darrell L Clarke
American Civil Liberties Union, Anthony D Romero
District Attorney, Larry Krasner
Office of Inspector General, Alexander F DeSantis
Pennsylvania Institutional Law Project, Director, Su Ming Yeh
File



Sent from Yahoo Mail for iPhone





Mail body: Prison locks



**EMPLOYEE VIOLATION REPORT**

RECEIVED
OCT 20 2021

*(Prepare in Quadruplicate)*

CC
WARDEN'S OFFICE    23 IC 09 I2

PHILADELPHIA PRISONS
DIVISION

| INSTITUTION OR UNIT | | DATE |
|---|---|---|
| PICC | | 10-20-2021 |

| NAME OF EMPLOYEE | EMPLOYEE NO. | TITLE |
|---|---|---|
| Sholanda Gregory | 234475 | Correctional Lieutenant |

| NAME OF COMPLAINANT | | TITLE |
|---|---|---|
| Gerald Simmons | 250097 | Correctional Captain |

**This Employee Violation is to bring to your attention the seriousness of your actions and the situation, as this will not be tolerated. As a result of your action, You are in violation of the following General Orders.**

**G.O.01   It is essential that each employee has a working knowledge of and complies with the policies and procedures, which relate to or have a bearing upon his/her duties, responsibilities and employment in PPS.**
**G.O.03. An employee shall be responsible for the efficient performance of his/her assigned duties.**
**G.O.05. All employees shall cooperate in maintaining the security and good order of the institution at all times.**

**G.O. 37. Any employee, who fails to take proper action while on duty, fails to assert proper authority or shows reluctance to carry out rules or orders shall be subject to disciplinary action.**

Code of Conduct
**VI.       Each employee shall exercise reason and good judgment …**
**VII.      Each employee shall accept responsibility for the proper performance of his/her duties**

Details:
       Lieutenant Gregory, on Saturday, October 9, 2021 you were the Shift Commander on the 0700-1500 Shift. I (Captain Simmons) had a conversation with you in regard to completing the TOC Report that is a part of the Shift Commander Paperwork. The TOC Report was not completed, and I informed you it must be completed as part of that packet that is sent to the Executive Staff. You were asked if you needed assistance or instruction with completing the report and you said no, and the TOC sheet was not done. On Sunday, October 10, 2021 at 1449 you had a conversation with Major Norman Williams and he also informed you the TOC report needed to be completed as part of the Shift Commander Paperwork. Again, the TOC report was not completed and emailed as part of the Shift Commander Paperwork. Therefore, you are receiving this Employee Violation for the above-mentioned General Orders and Code of Conduct. Future occurrences will lead to further disciplinary action.

**DISTRIBUTION**

*(State Rule, Order or Regulation violated and give details)*

*(Use reverse side if additional space is required)*

Sholanda Gregory
*(Complainant's Signature)*

**STATEMENT BY EMPLOYEE**

Plea:

My signature indicates that I received this Employee Violation Report. I do not necessarily agree with the charges.

N28|208

*(Employee's Signature)*

Present: Warden Farrell Capt. Simmons
Lt. Gregory, % Rawls (DC33)

ACTION TAKEN

Lt. Gregory refused to answer any questions due to "pending investiga"

☐ Case closed at Preliminary Hearing on

☒ Referred for Formal Disciplinary Action

| CHAIRMAN'S SIGNATURE | DATE | RECEIVED IN PERSONNEL OFFICE *(Date)* |
|---|---|---|
| Michelle M Farrell | 11-01-21 | |

EXHIBIT
B

RECEIVED

**EMPLOYEE VIOLATION REPORT** OCT 2 0 2021

*(Prepare in Quadruplicate)*

PICC

PHILADELPHIA PRISONS
DIVISION

| WARDEN'S OFFICE | |
|---|---|

| INSTITUTION OR UNIT PICC | 23 IC 09 12 | DATE 10-20- 2021 |
|---|---|---|
| NAME OF EMPLOYEE Sholanda Gregory | EMPLOYEE NO. 234475 | TITLE Correctional Lieutenant |
| NAME OF COMPLAINANT Gerald Simmons | 250097 | TITLE Correctional Captain |

This Employee Violation is to bring to your attention the seriousness of your actions and the situation, as this will not be tolerated. As a result of your action, You are in violation of the following General Orders.

**G.O.01**   It is essential that each employee has a working knowledge of and complies with the policies and procedures, which relate to or have a bearing upon his/her duties, responsibilities and employment in PPS.
**G.O.03.** An employee shall be responsible for the efficient performance of his/her assigned duties.
**G.O.05.** All employees shall cooperate in maintaining the security and good order of the institution at all times.
**G.O. 37.** Any employee, who fails to take proper action while on duty, fails to assert proper authority or shows reluctance to carry out rules or orders shall be subject to disciplinary action.

**Code of Conduct**
**VI.**   Each employee shall exercise reason and good judgment …
**VII.**   Each employee shall accept responsibility for the proper performance of his/her duties

**Details:**
      Lieutenant Gregory, you were the Shift Commander on the 2300-0700 Shift on several occasions dating back to September of 2021. I (Captain Simmons) examined several Custody Reports that contained multiple errors including inmates not assigned to the proper housing units on the report. Also, inmates that were out of custody or transferred to State facilities were still on the Custody Report. The Custody Report is a part of the Shift Commander Paperwork and it is critical that it contain accurate information. The Custody Report is part of the packet that is sent to the Executive Staff, and decisions are made in regarded to inmate movement on and off the Punitive and Protective Custody units based on the report. Please ensure the Custody Report has the most current and accurate information when completed. Therefore, you are receiving this Employee Violation for the above-mentioned General Orders and Code of Conduct. Future occurrences will lead to further disciplinary action.

**DISTRIBUTION**

*(State Rule, Order or Regulation violated and give details)*

*(Use reverse side if additional space is required)*

*(Complainant's Signature)*

**STATEMENT BY EMPLOYEE**

Plea: NG

My signature indicates that I received this Employee Violation Report.  I do not necessarily agree with the charges.

*(Date)*     *(Employee's Signature)*

Present: Warden Farrell, Capt. Simmons,     **ACTION TAKEN**
Lt. Gregory, Yo Rawls (oc33)                                        5- day suspension

☒ Case closed at Preliminary Hearing on               ☐ Referred for Formal Disciplinary Action.

CHAIRMAN'S SIGNATURE                     DATE 11-01-21     RECEIVED IN PERSONNEL OFFICE *(Date)*

Lt. Gregory refused to answer questions due to "pending investigation?"

EXHIBIT
C

## EMPLOYEE VIOLATION REPORT

*(Prepare in Quadruplicate)*

PHILADELPHIA DEPARTMENT OF PRISONS

| INSTITUTION OR UNIT | | DATE |
|---|---|---|
| Philadelphia Industrial Correctional Facility | | 11/3/2021 |

| NAME OF EMPLOYEE | EMPLOYEE NO. | TITLE |
|---|---|---|
| Sholonda Gregory | 234475 | Correctional Lieutenant |

| NAME OF COMPLAINANT | TITLE |
|---|---|
| James Smith | Correctional Captain |

### COMPLAINT
*(State Rule, Order or Regulation violated and give details)*

G.O. #1 – Working knowledge of and complies with the policies and procedures.

G.O. #3 – An employee shall be responsible for the efficient performance of his/her duties.

G.O. #5 – All employees shall cooperate in maintaining the security and good order of the institution at all times.

G.O. #37 – Any employee who fails to take proper action while on duty, fails to assert proper authority, or shows a reluctance to carry out rules or orders shall be subject to disciplinary action.

Lieutenant Gregory, you are being Issued an Employee Violation Report for not adhering to a standing order to complete a daily review and submit an accurate Custody Report on the 11pm-7am Shift. A review of these reports for Tuesday, November 2, 2021 and Wednesday, November 3, 2021 revealed the following: inmates that were temporarily housed on A, B, K and other units were transferred to F-Unit when that area was re-populated on Monday, November 1st. The above reports did not list any inmates that have been housed on F-unit. These inmates, however, were incorrectly listed as remaining on other housing units.

Lieutenant, your failure to complete and submit accurate Custody Reports violated the above captioned General Orders. Further occurrences may result in further disciplinary action.

*(Use reverse side if additional space is required)*

*(Complainant's Signature)*

### STATEMENT BY EMPLOYEE

My signature indicates that I received this Employee Violation Report. I do not necessarily agree with the charges.

*(Date)*

*(Employee's Signature)*

### ACTION TAKEN

☐ Case closed at Preliminary Hearing on

☐ Referred for Formal Disciplinary Action.

| CHAIRMAN'S SIGNATURE | DATE | RECEIVED IN PERSONNEL OFFICE *(Date)* |
|---|---|---|
| | | |

**DISTRIBUTION:**   ORIGINAL - EMPLOYEE    TRIPLICATE - PERSONNEL OFFICER
DUPLICATE - SUPERVISOR    QUADRUPLICATE - UNION



EXHIBIT
D

DocuSign Envelope ID: BD7C9F80-8247-4776-A6BB-0DB6C639E98A

| **REJECTION NOTICE DURING PROBATIONARY PERIOD** *(Prepare in Triplicate)* | CITY OF PHILADELPHIA PERSONNEL DEPARTMENT |
|---|---|

**NAME OF PROBATIONER**
**Sholonda Gregory PR#234475**

**ADDRESS**

**2944 Reed Street, Philadelphia PA 19146**

REC~~~~~D

DEC 0 8 2021

**CLASSIFICATION OF POSITION**
**Correctional Lieutenant**

PHI
HUMAN~               ..NT

**DIVISION AND/OR DEPARTMENT**
**Department of Prisons**

| EFFECTIVE DATE OF REJECTION *12-10-2021* | DATE OF LAST DAY OF PROBATIONARY PERIOD **12/27/2021** |
|---|---|

**TO THE PROBATIONER ABOVE-NAMED:**

You are hereby notified that you have been rejected from further employment from the position above described, effective at the close of work on the date of rejection above indicated, which is not later than the last day of your probationary period in that position. The Philadelphia Home Rule Charter and the Civil Service Regulations do not permit an appeal from this action to the Civil Service Commission. If you had permanent civil service status in another class immediately prior to your being appointed to this position, you may have a right to that position.

The specific reasons for your rejection from the above position are as follows:

Lieutenant Gregory, you were promoted to Correctional Lieutenant on June 28, 2021, and subsequently assigned to P.I.C.C. on the 11 p.m. to 7 a.m. shift. Your performance since assuming the role of Correctional Lieutenant has been unsatisfactory.

- **Training** – You attended formal training for newly appointed Correctional Lieutenants at the Training Academy during the weeks of July 5 and July 12, 2021. To help you in the transition of becoming a newly appointed Correctional Lieutenant, numerous communications were sent to you by your superiors to assist you in performing your responsibilities at a satisfactory level. I, Captain Smith, and Captain Gerald Simmons pr#250097 shifts were temporarily changed in an effort to assist you in your new role as a Correctional Lieutenant/Shift Commander. You were given training on all three shifts and paired up with a peer of your rank to help in this transition.

- As a guide, a printed document which shows all the reports that is to be completed and who is to receive them was placed where it could be visibly seen in the Shift Commander's office.

- The daily Kronos clearance email that you are responsible for has not been sent to the correct administrative staff as previously ordered. You have also been sending reports to a Correctional Captain who is no longer assigned to this facility. On August 2 you received a Counseling Record by the Deputy Warden of Operations for not returning his telephone call and subsequently your flippant response.

Continued on 2nd page

| 12/8/21 | *Capt Jones Smith* | *Captain* |
|---|---|---|
| Date | Signature of Supervisor | Title |

I **do not** recommend that this probationer be placed on the eligible list for this class.
*(do or do not)*

| APPROVED: | | *Commissioner* | 12/09/2021 |
|---|---|---|---|
| | Signature of Head of Office, Board or Commission | Title | Date |

**CONSENT OF PERSONNEL DIRECTOR**

Subject to verification of the above-stated reasons. I hereby consent to the rejection during the probationary period of the above-named person on the effective date indicated.

| December 10, 2021 | DocuSigned by: *Sheila Pate, Deputy Personnel Director* CC569C28BFF7476 |
|---|---|
| Date | Personnel Director |

73-S-64          COPIES TO: EMPLOYEE, DEPARTMENT, PERSONNEL DIRECTOR

**EXHIBIT
E**

DocuSign Envelope ID: BD7C9F80-8247-4776-A6BB-0DB6C639E98A

RECEIVED

DEC 0 8 2021



**2 Page – Rejection During of Probationer Period**

**Sholonda Gregory #234475**
**Correctional Lieutenant**

- On October 12, I sent you an email detailing numerous errors on the Custody Report and instructed you to correct them. You subsequently told me, "If you saw all of these errors why didn't you correct them?" That type of response to a superior who ordered you to correct your errors is unacceptable. You have resisted or challenged any assistance that your supervisors attempted to provide to you.

- You have not submitted weekly coaching and Supervisor Log Review Reports as required. We the Captains have instructed, coached, and verbally counseled you about not doing these tasks.

- The last investigation that you submitted to the Warden's office was on August 30th. But unfortunately, since that submission, you currently have nine outstanding investigations which you have not submitted. These investigations have been outstanding since July 17th.

- On August 2, you received a Counseling Record by the Deputy Warden of Operations for not returning his telephone call.

- You were issued three Employee Violation Reports while in your current role. Two were for inaccurate Custody Reports that you submitted. The Warden has recommended five-day suspension for one of these violations. There have been numerous errors with this report even after Captain Simmons and the Warden personally instructed you on how to complete this daily report. The other Employee Violation Report that you received was for not completing and submitting the Time Out of Cell Report as required. This report is sent to the Deputy Commissioners daily.

- On Thursday, November 18, 2021 you received a Written Warning for failure to submit weekly Supervisor Tour Logbook reports as required.

- You were late for Roll Call on four occasions, Monday, August 9, 2021, Saturday, August 14, 2021, Wednesday, August 25, 2021 and Tuesday, September 7, 2021.

You have not successfully completed the probationary period for the promotional rank of Correctional Lieutenant. I do not recommend that you be granted permanent Civil Service status.



# Philadelphia Prison System
## Philadelphia Industrial Correctional Center
8301 State Road
Philadelphia, PA  19136
215-685-7104 Fax: 215-685-7109

# Memorandum

Date:          December 10, 2021

To:            Sholonda Gregory, PR#234475

From:          Michele M Farrell, Warden, PICC

Re:            Rejection During Probationary Period


As of December 10, 2021, you have been rejected from the position of Correctional Lieutenant.  You will remain at PICC for the next two (2) weeks pending your transfer to another facility in the position of Correctional Sergeant.



EXHIBIT
F